**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

St. Jude Medical, S.C., Inc.,

                        Plaintiff,

v.

Neal J. Hanson and Biotronik, Inc.,

                        Defendants.

Civ. No. 13-2463 (RHK/JSM)

**MEMORANDUM OPINION AND ORDER**

Jonathon C. Marquet, Edward F. Fox, Jessica L. Klander, Kevin B. Hickey, Bassford Remele PA, Minneapolis, Minnesota, for Plaintiff.

Margaret E. Dalton, Andrew J. Pieper, Eric A. Bartsch, Todd A. Hanchett, Stoel Rives LLP, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

In this action, Plaintiff St. Jude Medical, S.C., Inc. ("SJM") alleges its former employee, Defendant Neal J. Hanson, breached his employment agreement by resigning from SJM and then working for a competitor, Defendant Biotronik, Inc. ("Biotronik"). With discovery ongoing, SJM now moves for partial summary judgment against Hanson to recover relocation expenses it paid Hanson months before he resigned. For the reasons set forth below, its Motion will be denied.

## BACKGROUND

The following facts are recited in the light most favorable to Hanson.

SJM markets and sells medical devices, including cardiac rhythm management ("CRM") devices. These are implantable devices, such as pacemakers and cardiac defibrillators, designed to address heart rhythm problems. In 2009, SJM hired Hanson to

work with CRM devices.  Initially, he worked in Kansas City as a Field Clinical Engineer and later as an Electrophysiology Technical Service Specialist.  In May 2011, he was promoted to work as a CRM sales representative in Wichita.  In 2012, Hanson wished to return to Kansas City, so his manager at the time, Gray Fleming, offered him a position there.  (Hanson Aff. ¶ 3.)  Hanson accepted the offer and signed an amendment to his employment agreement ("the Amendment") with a three-year term, effective October 28, 2012.  The Amendment outlines his title and compensation structure and further provides:

> In order to perform the duties hereunder, Employee agrees to relocate to the Kansas City area within ninety (90) days of the effective date of this Amendment.  As consideration for entering into this Amendment, SJM[] will assist with the costs of Employee's relocation . . . .  The relocation benefits come with the condition that if Employee's employment with SJM[] terminates within two (2) years of the date of benefits received, Employee will repay the entire relocation amount on a pro-rata basis as follows:  100% payback if employment terminates within one (1) year of the receipt of benefits. . . .  In such event, Employee's obligation to repay the relocation allowance amount will be considered a debt that is immediately due and payable . . . .

(Klander Aff. Ex. 1.)

In December, Hanson's family moved to Kansas City and SJM paid $47,007.82 total for the relocation.  In January, a new supervisor, Butch Peltz, replaced Fleming and asked Hanson to stay in Wichita because there was no work available for him in Kansas City.  Peltz prepared a new employment agreement for Hanson to stay in Wichita.  Hanson read the agreement and asked for information about it, but never actively negotiated its terms because he did not wish to remain in Wichita.  On April 23, 2013, Peltz offered Hanson a sales position in Wichita and Hanson rejected the offer and

resigned from SJM, believing SJM to be in breach of the Amendment to his employment agreement.

On June 14, 2013, Hanson accepted a position with Biotronik, one of SJM's competitors, selling CRM products.  In August, SJM commenced the instant action in Ramsey County, Minnesota, district court alleging three counts:  Hanson breached his fiduciary duty to SJM; Hanson breached his employment agreement with SJM; and Biotronik induced Hanson's breach of the employment agreement.  Defendants removed the action to this District.  Discovery is ongoing, but SJM now moves for partial summary judgment against Hanson on its breach-of-contract claim, seeking repayment of the relocation expenses, plus prejudgment interest.  Hanson asks the Court to deny the Motion or, in the alternative, to stay the Motion pending further discovery.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Beard v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist

creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); <u>Wood v. SatCom Mktg., LLC</u>, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

**I.  Breach of Contract**

SJM argues this is a straightforward breach-of-contract case—Hanson agreed to repay 100% of his relocation expenses if his employment terminated within one year, and it did. SJM contends no discovery is needed to prove its claim. But the claim is not as simple as SJM would have the Court believe—Hanson contends that *SJM* breached the contract first by refusing to transfer him to Kansas City and therefore cannot enforce the contract against him.[1]

Under Minnesota law, "it is elementary that a breach of contract by one party excuses performance by the other."[2] <u>Soderbeck v. Ctr. for Diagnostic Imaging, Inc.</u>, 793 N.W.2d 437, 441 (Minn. Ct. App. 2010) (quoting <u>Wasser v. W. Land Secs. Co.</u>, 107 N.W. 160, 162 (Minn. 1906)); <u>see also</u> <u>Assoc. Cinemas of Am., Inc. v. World Amusement Co.</u>, 276 N.W. 7, 10 (Minn. 1937); <u>MTS Co. v. Taiga Corp.</u>, 365 N.W.2d 321, 327 (Minn. Ct. App. 1985). Nevertheless, not every breach acts as a repudiation of the contract and excuses the other party's performance. "[I]f a breach is relatively minor

---

[1] Although this is a Motion for Summary Judgment, discovery has only just begun so the Court will take Hanson's allegations as true for the purposes of this Motion. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (the rules regarding evaluation of evidence on summary judgment only apply after adequate time for discovery has been allowed).

[2] Hanson's employment agreement contains a Minnesota choice-of-law provision. <u>See</u> <u>Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.</u>, 325 F.3d 1024, 1028 (8th Cir.2003) ("The district court must apply the choice-of-law rules of the forum state."); <u>Hagstrom v. Am. Circuit Breaker Corp.</u>, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994) (Minnesota honors choice-of-law clauses).

and not of the essence, the [other party] is still bound by the contract." Ridgeway Invs., LLC v. Glow Hospitality, LLC, No. A13-0008, 2013 WL 4404598, at *3 (Minn. Ct. App. Aug. 19, 2013) (quoting Williston on Contracts § 63:3).  A party "is discharged from further performance . . . only when there is a material breach."  Id.  "[A] 'material breach' is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform."  Id.; see also BOB Acres, LLC v. Schumacher Farms, LLC, 797 N.W.2d 723, 728–29 (Minn. Ct. App. 2011); Skoberg v. Huisman, No. C7-02-2059, 2003 WL 22014576, at *2–3 (Minn. Ct. App. Aug. 19, 2003).  Whether a breach is material is generally a question of fact.  Ridgeway Invs., 2013 WL 4404598, at *3.

SJM contends it did not breach any term of the Amendment—material or otherwise—by employing Hanson in Wichita indefinitely.  It argues the Amendment contains no affirmative duty for SJM to transfer Hanson to Kansas City, much less within a specified time frame.  Rather, as the Amendment provides the "*Employee* agrees to relocate to the Kansas City area within ninety (90) days," SJM argues that *Hanson* was the party with the obligation and the deadline.  (Klander Aff. Ex. 1. (emphasis added).)  But SJM reads Hanson's promise to relocate in isolation.  See Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998) (In interpreting a contract, courts "read contract terms in the context of the entire contract.").  In fact, his promise was prefaced by the phrase, "*In order to perform the duties hereunder*," indicating he

promised to relocate as a condition of SJM transferring his employment within the same time frame. (Klander Aff. Ex. 1. (emphasis added).) In the Court's view, this is the only reasonable interpretation of the Amendment, as SJM's suggested interpretation would lead to an absurd result: requiring Hanson to pick up and move to Kansas City within ninety days but then commute to Wichita, three hours away, for work every day. See Brookfield, 584 N.W.2d at 394 ("In interpreting a contract, . . . [courts] will not construe the terms so as to lead to a harsh and absurd result.") (internal citations omitted).

A jury could reasonably find that SJM violated a material provision of the Amendment by failing to transfer Hanson, see Ridgeway Invs., 2013 WL 4404598, at *3 (materiality of breach is generally a question of fact for the jury), in which case he would have been excused from continuing to perform his obligations thereunder, including repayment of his relocation expenses. Accordingly, SJM has not proven it is entitled to summary judgment on its breach-of-contract claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that SJM's Motion for Partial Summary Judgment (Doc. No. 18) is **DENIED**.[3]

Dated: June 4, 2014

                                            s/Richard H. Kyle
                                            RICHARD H. KYLE
                                            United States District Judge

---

[3] "Summary judgment is inappropriate until [defendant] has had an adequate opportunity to conduct discovery. If, after discovery has been completed, sufficient facts cannot be adduced to support a genuine dispute concerning a fact material to a plaintiff's claim, then the court may once again entertain [plaintiff's] motion for summary judgment." Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers, 958 F.2d 836, 839 (8th Cir. 1992).