**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

St. Jude Medical S.C., Inc.,

Plaintiff,

v.

Neal J. Hanson,

Defendant.

Civ. No. 13-2463 (RHK/BRT)
**MEMORANDUM OPINION AND ORDER**

---

Edward F. Fox, Jessica L. Klander, Jonathan C. Marquet, Kevin P. Hickey, Mark R. Bradford, Kate L. Homolka, Bassford Remele, PA, Minneapolis, Minnesota, for Plaintiff.

Margaret E. Dalton, Eric A. Bartsch, Andrew J. Pieper, Stoel Rives, LLP, Minneapolis, Minnesota, Todd A. Hanchett, Stoel Rives, LLP, Portland, Oregon, for Defendant.

---

## INTRODUCTION

This matter is before the Court on the parties' post-trial motions, specifically: St. Jude Medical S.C., Inc.'s ("SJM") Motion for a New Trial (Doc. No. 191); Hanson's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, to Amend or Alter the Judgment (Doc. No. 193); and Hanson's Objections (Doc. No. 211) to SJM's Bill of Costs (Doc. No. 196).[1] For the reasons set forth below, SJM's Motion for a New Trial will be denied, Hanson's Motion for Judgment as a Matter of Law or to Alter or Amend the Judgment will be denied, and Hanson's Objections will be sustained in part and overruled in part.

---

[1] SJM also brings a Motion for Prejudgment Interest (Doc. No. 188). As the Motion is unopposed, the Court will grant it and award the amount requested by SJM.

**BACKGROUND**

This case arose after Hanson, a medical device sales representative, left SJM to work for Biotronik, a direct competitor. The facts of this case have been set forth in extensive detail in the Court's prior opinions and will not be repeated here; familiarity with those opinions is assumed. See, e.g., St. Jude Medical S.C., Inc. v. Hanson, Civ. No. 13-2463, 2015 WL 2101055 (D. Minn. May 6, 2015) (Kyle, J.).

While discovery was ongoing, SJM moved for partial summary judgment against Hanson on its breach of contract claim to recover the relocation expenses it paid to him. The Court denied partial summary judgment on this issue, finding that SJM first breached the employment agreement but leaving the materiality of that breach an issue for the jury. (See Doc. No. 62 ("Partial Summ. J. Order").) Then, at the close of discovery, SJM moved for summary judgment on all claims. The Court granted the Motion in part and dismissed the tortious interference and constructive trust claims. (See Doc. No. 107 ("Summ. J. Order").)

The remaining claims for breach of contract and breach of duty of loyalty were tried to a jury from August 3, 2015, to August 10, 2015. On August 11, 2015, the jury found Hanson materially breached his employment contract with SJM but did not breach his duty of loyalty. The jury awarded SJM $95,000 in damages. The Court adopted the jury's verdict and judgment was entered on August 14, 2015.

## ANALYSIS

### I. SJM's Motion for New Trial

#### A. The breach of duty of loyalty claim

SJM argues it is entitled to a new trial because the jury's verdict in favor of Hanson on the duty-of-loyalty claim is against the clear weight of the evidence. This case largely came down to a "he said, she said" argument. To support this claim, SJM presented evidence at trial—partially through the testimony of Bob Koop, an agent of Biotronik—that the breach of loyalty occurred when Hanson and Koop schemed to get Hanson out of his employment contract with SJM so that he could start working with Biotronik. (Fox Decl. Exs. 1 at 13, 31–33, Doc. No. 201.) Based on these facts, SJM argues Hanson breached his duty of loyalty because he did not work in good faith and did not advance his employer's commercial interests. (Pl. Mem. at 5–7, Doc. No. 200.)

However, SJM's interpretation of the duty of loyalty is mistaken in this context. Under Minnesota employment law, the duty of loyalty prohibits an employee from "soliciting the employer's customers for herself, or from otherwise competing with her employer, while she is employed." Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). At trial, the jury determined the credibility of all the witnesses, weighed their testimony, and found no improper solicitation or competition to support a breach of loyalty. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) ("Credibility determinations . . . are jury functions, not those of a judge."). Here, however, SJM has merely offered an alternative interpretation of the evidence presented. Because the jury's finding in favor of Hanson on the breach of duty

of loyalty claim is amply supported by the evidence, the verdict as to this count will not be disturbed. See Leichihman v. Pickwick, Int'l, 814 F.2d 1263, 1267 (8th Cir. 1987) ("The court must be motivated by more than the fact that it would have come to a different conclusion had it been the trier of fact." (quoting Leichihman v. Pickwick Int'l, Inc., 589 F. Supp. 831, 833 (D. Minn. 1984) (Devitt, J.))).

**B. Damages**

SJM argues it is entitled to a new trial on damages because of two errors committed by the Court: first, the inclusion of language in the jury instructions and special verdict form about SJM having first breached the contract, and second, the admission of certain defense exhibits over SJM's hearsay and prejudice objections during the testimony of Hanson's damages expert, Frances McCloskey.

*1. Jury Instructions and Special Verdict Form.* SJM argues the Court's instructions to the jury that it breached Hanson's contract first caused the jury to award it unfair and unreasonably low damages because they constituted "Court-sanctioned statement[s] that SJM had done something to harm Hanson." (Pl. Mem. at 13, Doc. No. 200.) This language is included in Jury Instruction #8 and Special Verdict Form Question #1. Jury Instruction #8 stated, in relevant part:

> The Court has already determined that St. Jude Medical breached the employment contract by not transferring Mr. Hanson to Kansas City by January 27, 2013, but there has not yet been a determination as to whether that was a material breach; that is a question which you the jury will have to resolve. . . .

(Doc. No. 172 at 11.) Question #1 on the Special Verdict Form stated, "The Court has already determined that St. Jude Medical breached its contract with Mr. Hanson by not

transferring him to Kansas City by January 27, 2013 . . . ." (Doc. No. 182 at 1.) SJM has repeatedly raised objections to the Court's finding that SJM first breached the contract. (See generally Pl. Mem. at 7, Doc. No. 200; Partial Summ. J. Order.) In the present Motion, however, SJM simply rearticulates these objections and provides no novel reason for the Court to revisit its prior rulings, let alone conclude otherwise. SJM knew the issue of materiality had to go to the jury, and without instruction to it that SJM had breached the contract, it would have been confused.

Furthermore, even if telling the jury that SJM breached the contract was erroneous, "[m]any errors in jury instructions are harmless." Acuity v. Johnson, 776 F.3d 588, 596 (8th Cir. 2015). Any error here would be harmless because, despite SJM's repeated objections, it also acknowledged that including instructions on waiver and material breach would "balance[] out" the directions regarding SJM's breach of the contract. (Fox. Decl. Ex. 1 at 41, Doc. No. 201.) The Court included the waiver and materiality instructions that SJM requested. (Doc. No. 172 at 14, 15.) The jury instructions and verdict form are to be read as a whole to determine whether they fairly and adequately submitted the issues and the law to the jury. Lee v. Andersen, 616 F.3d 803, 811 (8th Cir. 2010). The Court concludes that was the case here.

*2. Evidentiary rulings.* SJM argues that a new trial as to damages is warranted because the jury's verdict was substantially influenced by the admission of defense exhibits 76 and 91-98 during McCloskey's expert testimony regarding damages. It contends a new trial without this prejudicial hearsay evidence would produce a different result. Hanson argues, regardless of hearsay concerns, the exhibits were properly

admitted because McCloskey relied on them to explain to the jury the multitude of factors that caused SJM to lose profits.

A district court has wide discretion in admitting and excluding evidence, Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007), such that any erroneous ruling only warrants a new trial when that error was so prejudicial as to affect that party's substantial rights, Pointer v. DART, 417 F.3d 819, 822 (8th Cir. 2005) (citation omitted). Assuming for the sake of argument the admission of these exhibits was erroneous, the error was not "so prejudicial" as to warrant a new trial. These exhibits were relevant to the foundation of McCloskey's opinion. "Attacks on the foundation for an expert's opinion . . . go to the weight rather than the admissibility of the expert's testimony." Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 955 (8th Cir. 2000); Fed. R. Evid. 703. Furthermore, any prejudice that did result in the admission of these exhibits was dissipated through cross-examination. SJM was allowed to, and did, cross-examine McCloskey as to the content in each of the admitted exhibits. Therefore, SJM's Motion for a New Trial is denied.

## II. Hanson's Renewed Motion for Judgment as a Matter of Law or, alternatively, to Alter or Amend the Judgment

When "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party." Fed. R. Civ. P. 50(a)(1)(A). Pursuant to this Rule, Hanson moved for judgment as a matter of law at the close of SJM's case. (Doc. No. 229 at 68.) The Court denied the Motion, concluding "there [wa]s sufficient evidence to let the jury resolve those issues." (Id. at 74.) Hanson

has now renewed his Motion, as is appropriate under Rule 50(b). A renewed motion should only be granted "when the evidence is entirely insufficient to support the verdict"—this high standard prevents courts from usurping the jury's function in assessing credibility and analyzing evidence. Garcia v. City of Trenton, 348 F.3d 726, 727 (8th Cir. 2003) (internal citations omitted).

Hanson simply reiterates the same arguments he made at the charge conference and in his initial Rule 50(a) Motion. He argues the jury should not have been allowed to decide the issue of waiver because the "No waiver" and "No oral modifications" clauses in his employment agreement created an issue of law, not fact. He also argues Jury Instruction #11 was inaccurate because the Court did not instruct the jury as to the effect of these clauses. However, the Court has already ruled on these arguments and Hanson has offered nothing new that leads it to alter its prior conclusions. See Gill v. Maciejewski, 546 F.3d 557, 562 (8th Cir. 2008) ("The moving party bears a heavy burden on a motion for JAML [judgment as a matter of law]."). Because the jury had sufficient evidence on which to find for SJM on the breach-of-contract claim and was properly instructed on the law, the Court will deny Hanson's Motion.

**III. Costs**

SJM filed a Bill of Costs seeking to recover $26,934.46 in costs. See Fed. R. Civ. P. 54(d)(1). In particular, SJM seeks $26,577.66 for printed and electronically recorded transcripts and $356.80 for copying trial exhibits. While a prevailing party "is presumptively entitled to recover all [its] costs," Thompson v. Wal-Mart Stores, Inc., 472 F.3d 515, 517 (8th Cir. 2006), a district court enjoys substantial discretion to reduce or

deny costs in appropriate circumstances, Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 762 (8th Cir. 2006).[2] Here, however, Hanson hasn't objected to an award of costs generally, but instead, timely raised objections to specific costs.[3]

*1. Copying costs.* Hanson objects to $356.80 SJM seeks to tax for copying trial exhibits. It is well settled that costs incurred for photocopying trial exhibits are recoverable. 28 U.S.C. § 1920(4); St. Jude Medical, S.C., Inc. v. Biosense Webster, Inc., Civ. No. 12-621, 2015 WL 317362, at *3 (D. Minn. Jan. 26, 2015) (Montgomery, J.); Sphere Drake Ins. PLC v. Trisko, 66 F. Supp. 2d 1088, 1093 (D. Minn. 1999) (Erickson, J.). Accordingly, the Court overrules this objection and will tax the copying costs.

*2. Transcript costs.* Hanson objects to SJM's attempt to tax $1,026.00 for a second copy of the trial transcript. Because SJM has not shown the second copy was "necessarily obtained for use in the case," the Court sustains the objection and will deduct this cost. See 28 U.S.C. § 1920(2).

*3. Deposition costs.* Hanson raises several objections to the $23,898.91 in deposition costs claimed by SJM. First, he argues SJM should not recover the costs

---

[2] Under Federal Rule of Civil Procedure 54(d)(1), the Clerk of the Court typically first taxes costs, after which a party may appeal the Clerk's action to the presiding judicial officer. However, the Court need not wait for the Clerk and will instead tax costs itself. See, e.g., Nelson v. Darragh Co., 120 F.R.D. 517, 518 (W.D. Ark. 1988) (Morris Sheppard Arnold, J.) (collecting cases recognizing that district court may act on bill of costs before court clerk).

[3] In its Response Memorandum, SJM briefly argues that Hanson's Objections to its Bill of Costs are untimely and should be rejected. (Doc. No. 215.) Regardless of timeliness, the Court will consider Hanson's Objections. See Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

incurred for both video and stenographic transcripts of the same deposition. Recently, however, the Eighth Circuit held that 28 U.S.C. § 1920(2)—allowing "[f]ees for printed or electronically recorded transcripts"—permits the taxation of costs for *both* printed and electronically recorded transcripts of the same deposition *as long as each transcript is necessarily obtained for use in the case*. Stanley v. Cottrell, Inc., 784 F.3d 454, 465–67 (8th Cir. 2015) (emphasis added). SJM argues the video format was necessary due to its inability to compel the live trial testimony of many of the witnesses and in anticipation of Hanson using video testimony at trial because he was the first to elect to video-record the depositions. SJM further points out that Hanson noticed many of the depositions of SJM's former and current employees, forcing SJM to defend them. See EEOC v. Hibbing Taconite Co., Civ. No. 09-729, 2010 WL 4237318, at *2 (D. Minn. Oct. 21, 2010) (Kyle, J.) (considering who noticed the deposition to determine "necessity"). SJM further argues it needed the printed transcripts for use in its pre-trial motion practice. See Superior Seafoods Inc. v. Hanft Fride, Civ. No. 05-170, 2011 WL 6218286, at *1 (D. Minn. Nov. 21, 2011) (Noel, M.J.) (stating "deposition transcripts for witnesses that possessed information relevant to the claims or defenses in the case may be taxed, even though the transcripts were not used at summary judgment"); EEOC, 2010 WL 4237318, at *2 (considering whether the depositions "unearthed information relevant to the parties' Motions in Limine or other matters in the case" to determine "necessity"). The Court finds that SJM has put forth sufficient reasons why both the video and printed versions were necessarily obtained for use in the case. Thus, the costs for both formats are recoverable and Hanson's objection is overruled.

Second, Hanson argues the deposition of Ramon Carrasquillo is not taxable because he did not testify at trial and thus, the sole purpose of his deposition was for discovery. The fact that a deposition was not used at trial is not dispositive. See Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006). Carrasquillo is employed by Biotronik, which was a co-defendant in this action at the time his deposition was taken. There is no question that Carrasquillo was a potential trial witness—he was identified on the witness lists of both parties and was alleged to have had a hand in influencing Hanson to leave SJM. See Zotos v. Lindbergh School Dist., 121 F.3d 356, 363–64 (8th Cir. 1997) (stating deposition transcripts were necessarily obtained at time taken because deponents were possible trial witnesses). Thus, because Carrasquillo's deposition was necessarily obtained for use in the case, Hanson's objection is overruled.

Third, Hanson objects to the $750.40 in costs for expediting the transcripts of Katsorelos's deposition and McCloskey's third deposition. He argues they were expedited solely for counsel's convenience. "Fees for expedited transcripts are not taxable absent some explanation why expedition was necessary" beyond the convenience of counsel. Delgado v. Hajicek, Civ. No. 07-2186, 2009 WL 2366558, at *3 (D. Minn. July 30, 2009) (Kyle, J.). SJM posits that it necessarily incurred the costs of expediting these transcripts "to ensure prompt delivery and sufficient time to review and analyze" and "digest the contents." (Pl. Resp. at 6–7, Doc. No. 215.) The Court is unconvinced that expedition of the transcripts was necessary for any reason other than counsel's convenience and sustains Hanson's objections. The Court will deduct $750.40 from the taxable costs.

Finally, Hanson argues that SJM cannot recover $428.56 for postage and delivery fees charged by the court reporter. Fees charged by the court reporter for postage and delivery of transcripts are not recoverable. Smith, 436 F.3d at 889–90. Hanson's objection to this cost is sustained and the cost will be deducted.

In total, therefore, the Court will tax $24,729.50 in costs.

| **Item** | **Requested** | **Deducted** | **Total** |
|---|---|---|---|
| *Copying Costs* | $356.80 | $0 | $356.80 |
| *Transcript Costs* | $2,678.75 | $1,026.00 | $1,652.75 |
| *Deposition costs* | $23,898.91 | $1,178.96 | $22,719.95 |
| ***TOTAL*** | | | **$24,729.50** |

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. St. Jude Medical's Motion for New Trial (Doc. No. 191) is **DENIED**;

2. Hanson's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, to Amend or Alter the Judgment (Doc. No. 193) is **DENIED**;

3. St. Jude Medical's Motion for Award of Prejudgment Interest (Doc. No. 188) is **GRANTED**, and Plaintiff is awarded $18,817.81 in prejudgment interest. Accordingly, the Clerk of Court shall **AMEND** the Judgment (Doc. No. 187) in this action as follows: Plaintiff shall recover of Defendant the sum of $113,817.81 on its claim of breach of contract (Count I), comprising $95,000 in damages and $18,817.81 in prejudgment interest; and

4. Hanson's Objections (Doc. No. 211) to St. Jude Medical's Bill of Costs (Doc. No. 196) are **SUSTAINED IN PART** and **OVERRULED IN PART**. The Clerk of Court shall tax costs against Hanson in the amount of $24,729.50.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 13, 2015

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge